UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENRY ROBERTSON BARRETT,

      Plaintiff,

v.

THE ARENA GROUP HOLDINGS, INC. and
MANOJ BHARGAVA,

      Defendants.

1:24-cv-00673-DEH

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT MANOJ BHARGAVA'S PARTIAL MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    I.   Barrett's Employment and Termination .......................................................... 2

    II.  Barrett's Claims Against Bhargava ................................................................. 3

LEGAL STANDARD ..................................................................................................... 5

ARGUMENT .................................................................................................................. 6

    I.   Barrett Fails to State a Claim Against Bhargava for Breach of the Implied Covenant of Good Faith and Fair Dealing .............................................................................. 6

    II.  Barrett Fails to State a Claim Against Bhargava for Defamation ..................... 7

    III.  Barrett Fails to State a Claim against Bhargava Under the FLSA .................... 17

CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Ahead Realty LLC v. India House, Inc.*,
  938 N.Y.S.2d 17 (App. Div. 2012) ........................................................................... 6

*Aristocrat Plastic Surgery, P.C. v. Silva*,
  169 N.Y.S.3d 272 (App. Div. 2022) ........................................................................ 9

*ASARCO LLC v. Goodwin*,
  756 F.3d 191 (2d Cir. 2014) ................................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 2, 5

*Barone v. Inspire Summits LLC*,
  2022 WL 3139124 (E.D.N.Y. Aug. 4, 2022) ......................................................... 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 5

*Ben Hur Moving & Storage, Inc. v. Better Bus. Bureau of Metro. N.Y., Inc.*,
  2008 WL 4702458 (S.D.N.Y. Oct. 3, 2008) ........................................................ 5, 7

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015) ................................................................................... 8

*Bostich v. U.S. Tr. Corp.*,
  650 N.Y.S.2d 524 (App. Div. 1996) ...................................................................... 15

*BYD Co. v. VICE Media LLC*,
  2022 WL 598973 (2d Cir. Mar. 1, 2022) ................................................................ 8

*Cabello-Rondón v. Dow Jones & Co., Inc.*,
  2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017) ............................................... 9, 11, 17

*CDC Newburgh Inc. v. STM Bags, LLC*,
  2023 WL 6066136 (S.D.N.Y. Sept. 18, 2023) ........................................................ 4

*Cent. States, Se. and Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
  543 F. App'x 72 (2d Cir. 2013) .............................................................................. 3

*Chapadeau v. Utica Observer-Dispatch, Inc.*,
  341 N.E.2d 569 (N.Y. 1975) .................................................................................. 8

*Davis v. Sedgwick Claims Mgmt. Servs. Inc.*,
  2023 WL 6150009 (S.D.N.Y. Aug. 30, 2023) ....................................................... 17

*Dfinity Found. v. N.Y. Times Co.*,
   2023 WL 7526458 (S.D.N.Y. Nov. 13, 2023) ......................................................... 14

*Doe #1 v. Syracuse Univ.*,
   468 F. Supp. 3d 489 (N.D.N.Y. 2020) ................................................... 10, 11, 14, 17

*Doe v. White Plains Hosp. Med. Ctr.*,
   2011 WL 2899174 (S.D.N.Y. July 8, 2011) ........................................................... 12

*Doscher v. Meyer*,
   112 N.Y.S.3d 237 (App. Div. 2019) ...................................................................... 15

*Ferlito v. Cnty. of Suffolk*,
   2007 WL 4180670 (E.D.N.Y. Nov. 19, 2007) ....................................................... 11

*Goldman v. Reddington*,
   417 F. Supp. 3d 163 (E.D.N.Y. 2019) ................................................................... 11

*Hodges v. Lutwin*,
   2023 WL 3362836 (2d Cir. May 11, 2023) ........................................................... 17

*Hosseini v. Miilkiina LLC*,
   2023 WL 2136390 (S.D.N.Y. Feb. 21, 2023) ....................................................... 17

*Howard v. Alford*,
   645 N.Y.S.2d 208 (App. Div. 1996) ...................................................................... 15

*Jacobus v. Trump*,
   51 N.Y.S.3d 330 (Sup. Ct. 2017) .......................................................................... 14

*Kamdem-Ouaffo v. Pepsico, Inc.*,
   160 F. Supp. 3d 553 (S.D.N.Y. 2016) ...................................................................... 6

*Kesner v. Dow Jones & Co., Inc.*,
   515 F. Supp. 3d 149 (S.D.N.Y. 2021) .............................................................. 12, 16

*Kilkenny v. L. Off. of Cushner & Garvey, LLP*,
   905 N.Y.S.2d 661 (App. Div. 2010) ...................................................................... 10

*Kjar v. Jordan*,
   630 N.Y.S.2d 825 (App. Div. 1995) ...................................................................... 10

*Konikoff v. Prudential Ins. Co. of Am.*,
   1999 WL 688460 (S.D.N.Y. Sept. 1, 1999) .......................................................... 16

*Konikoff v. Prudential Ins. Co. of Am.*,
   234 F.3d 92 (2d Cir. 2000) ...................................................................................... 8

*Kraus v. Brandstetter*,
    610 N.Y.S.2d 527 (App. Div. 1994) ................................................................ 15

*Lee v. City of Rochester*,
    663 N.Y.S.2d 738 (Sup. Ct. 1997) .................................................................. 7

*Lian v. Sedgwick James of N.Y., Inc.*,
    992 F. Supp. 644 (S.D.N.Y. 1998) ........................................................... 12, 16

*Lindberg v. Dow Jones & Co., Inc.*,
    2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021) ............................................... 9

*Loughlin v. Goord*,
    558 F. Supp. 3d 126 (S.D.N.Y. 2021) ........................................................ 16

*Margolies v. Rudolph*,
    2022 WL 2062460 (E.D.N.Y. June 6, 2022) ............................................... 9

*Margolies v. Rudolph*,
    2023 WL 6151514 (E.D.N.Y. Sept. 20, 2023) .............................................. 8

*Marom v. Pierot*,
    2020 WL 6572509 (S.D.N.Y. Aug. 30, 2020) .............................................. 14

*McCormick v. Phinizy & Phebe Handmade LLC*,
    2020 WL 13572189 (E.D.N.Y. Aug. 17, 2020) ............................................ 18

*Mobile Data Shred, Inc. v. United Bank of Switz.*,
    2000 WL 351516 (S.D.N.Y. April 5, 2000) ............................................... 13

*Momin v. Quantierra Advisors LLC*,
    2022 WL 2002282 (S.D.N.Y. June 3, 2022) ............................................... 18

*Nakhata v. New York-Presbyterian Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 2013) ....................................................................... 17

*Nichols v. Item Publishers, Inc.*,
    132 N.E.2d 860 (N.Y. 1956) ....................................................................... 12

*Novartis Pharma AG v. Incyte Corp.*,
    520 F. Supp. 3d 514 (S.D.N.Y. 2021) .......................................................... 6

*Post v. Regan*,
    677 F. Supp. 203 (S.D.N.Y. 1988) ............................................................... 8

*Raffaele v. City of New York*,
    144 F. Supp. 3d 365 (E.D.N.Y. 2015) .................................................... 4, 7, 11

*Ratzel v. N.Y. News Pub. Co.*,
  73 N.Y.S. 849 (App. Div. 1902) .................................................................. 12

*Ray Legal Consulting Grp. v. DiJoseph*,
  37 F. Supp. 3d 704 (S.D.N.Y. 2014).............................................................. 6

*Reilly v. NatWest Mkts. Grp. Inc.*,
  181 F.3d 253 (2d Cir. 1999)......................................................................... 13

*Reynolds v. Vill. of Chittenango*,
  2020 WL 1322509 (N.D.N.Y. Mar. 20, 2020) ............................................... 7

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
  366 N.E.2d 1299 (N.Y. 1977) ...................................................................... 11

*Rsrv. Sols., Inc. v. Vernaglia*,
  438 F. Supp. 2d 280 (S.D.N.Y. 2006)............................................................ 5

*Salvatore v. Kumar*,
  845 N.Y.S.2d 384 (App. Div. 2007) .............................................................. 7

*Sheffield v. Roslyn Union Free Sch. Dist.*,
  2014 WL 4773993 (E.D.N.Y. Aug. 11, 2014).............................................. 4, 6

*Shetty v. SG Blocks, Inc.*,
  2020 WL 3183779 (E.D.N.Y. June 15, 2020) .............................................. 18

*Stepanov v. Dow Jones & Co., Inc.*,
  987 N.Y.S.2d 37 (App. Div. 2014)............................................................... 12

*Stillman v. Ford*,
  238 N.E.2d 304 (N.Y. 1968)........................................................................ 16

*Thai v. Cayre Grp., Ltd.*,
  726 F. Supp. 2d 323 (S.D.N.Y. 2010)........................................................... 17

*Treppel v. Biovail Corp.*,
  2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005)............................................... 10

*Unlimited Cellular, Inc. v. Red Points Sols. SL*,
  2023 WL 4029824 (S.D.N.Y. June 14, 2023) ................................................ 9

*Varughese v. Mount Sinai Med. Ctr.*,
  2015 WL 1499618 (S.D.N.Y. Mar. 27, 2015) .............................................. 15

*Yukos Cap. S.A.R.L. v. Feldman*,
  2016 WL 183360 (S.D.N.Y. Jan. 11, 2016) ................................................. 13

v

**Statutes**

29 U.S.C. § 206 ................................................................................................................. 17

N.Y. Civ. Rights Law § 76-a .......................................................................................... 8, 9

**Rules**

Fed. R. Civ. P. 8 .............................................................................................................. 13

Fed. R. Civ. P. 12 .............................................................................................................. 5

## INTRODUCTION

Dismissed from his position as a highly-paid executive at The Arena Group Holdings, Inc. ("Arena"), Plaintiff Henry Robertson Barrett has turned around and sued his former employer and Manoj Bhargava, an investor whose company is in the process of merging with Arena. Counts Four, Five, and Six of the Complaint assert four claims against Bhargava, three of which fail to state a claim and should be summarily dismissed.

To start, Barrett's claim that Bhargava breached his duty of good faith and fair dealing (Count Five) can only be asserted against a fellow contracting party. Barrett has not pled, nor could he, that Bhargava is party to a contract with him. Likewise, Barrett's defamation claims (Count Six) are riddled with deficiencies and it is appropriate to dismiss them now, at the pleading stage. Although Barrett omitted the full text of the statements from his Complaint, Bhargava has remedied his oversight by attaching them here. When viewing the statements in their entirety—something the Court can and should do—the holes in his claims are readily apparent. As an initial matter, Barrett does not allege that Bhargava acted with the requisite degree of fault in making any of the allegedly defamatory statements. Moreover, Bhargava did not actually make two of the statements that Barrett attributes to him. Some of the statements are substantially true; others are not defamatory as a matter of law. And one statement is a non-actionable statement of common interest, while another is non-actionable opinion. Lastly, Barrett's claim that Bhargava violated the Fair Labor Standards Act ("FLSA") by failing to pay him a six-figure bonus (Count Four) flies smack in the face of well-settled law confirming that employees may only sue to recover minimum and overtime wages under the FLSA.

Barrett's Complaint does not come close to stating a cognizable cause of action against Bhargava under these theories. Accordingly, the Court should dismiss Barrett's claims against

Bhargava for (1) breach of the duty of good faith and fair dealing; (2) defamation; and (3) violation of the FLSA.

**BACKGROUND**

Bhargava assumes the truth of the allegations contained in Barrett's Complaint for purposes of this Motion only. *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I.     Barrett's Employment and Termination

In February 2021, TheMaven, Inc. ("TheMaven") hired Barrett as its President, Media. (Compl. ¶ 9, ECF No. 8.) Barrett and TheMaven entered into an Executive Employment Agreement (the "Employment Agreement") that outlined the terms of Barrett's compensation package. (*Id.* ¶¶ 10-12.) Under the contract, TheMaven agreed to pay Barrett an annual salary and an annual bonus of up to 100% of his salary, in addition to a grant of equity. (*Id.* ¶¶ 11-12.) A year later, TheMaven rebranded itself as The Arena Group Holdings, Inc. (*Id.* ¶ 16.)

In August 2023, Arena and Simplify Inventions, LLC ("Simplify") signed a letter of intent in which Simplify agreed to purchase some of Arena's assets in exchange for $50 million. (*Id.* ¶ 26.) Around the same time, Arena allegedly agreed to amend Barrett's Employment Agreement to increase his annual salary from $441,000 to $500,000, pay him a $150,000 "signing bonus," and grant him additional stock options (the "Amendment"). (*Id.* ¶¶ 19-20.) Arena and Barrett also allegedly entered into a side letter providing for an extra 12 months of severance pay—on top of the 12 months already provided by his Employment Agreement—if Arena terminated Barrett's employment without cause or if he left the company within 12 months after a change in control of the company (the "Severance Agreement"). (*Id.* ¶¶ 22-24.)

On November 30, 2023, Simplify purchased a sufficient amount of Arena's shares and debt to trigger a change in control of the company. (*Id.* ¶¶ 28-29.) Shortly thereafter, Arena

2

terminated Barrett's employment for cause, effective December 5, 2023. (*Id.* ¶¶ 30, 42.) Arena did not pay Barrett any severance, nor did it pay out his 2023 bonus. (*Id.* ¶¶ 56-58.)[1]

Approximately a week after Barrett's termination, Arena's Board of Directors dismissed Chief Executive Officer Ross Levinsohn and named Bhargava interim CEO. (Ex. 1 to Declaration of Eric J. Pelton ("Pelton Decl.").)[2] Bhargava served as Arena's interim CEO for three weeks before resigning on January 5, 2023. (Compl. ¶ 45.)

## II.   Barrett's Claims Against Bhargava

Barrett brings three counts that include four causes of action against Bhargava as an individual. (*Id.* ¶¶ 77-92.) In Count Four, he alleges that Bhargava violated both New York wage and hour laws and the FLSA by failing to pay him his bonus. (*Id.* ¶¶ 77-83.) In Count Five, he claims Bhargava breached his duty of good faith and fair dealing by failing to pay him the bonus and severance pay allegedly provided by Barrett's agreements with Arena. (*Id.* ¶¶ 84-87.) Lastly, Barrett accuses Bhargava of four separate instances of defamation in Count Six (*id.* ¶¶ 88-92), as follows:

**Statement 1:** First, Barrett alleges that "[t]he company publicly announcing that Mr. Barrett's termination was done 'to improve the operational efficiency and revenue of the company' was defamation per se in as much [*sic*] it implied that Mr. Barrett was not efficient or improving company revenue." (*Id.* ¶ 88.) This claim is based on a press release that Arena issued on December 11, 2023 stating:

---

[1] This lawsuit is, at its core, a breach of contract case. The centerpiece of Barrett's Complaint is his claim that Arena breached its agreements with him by failing to pay his severance and bonus, failing to reimburse him for COBRA premiums, and failing to grant him equity. (Compl. ¶¶ 60-63.)

[2] The Court may properly consider the full text of this announcement because Barrett's Complaint incorporates it by reference. Compl. ¶ 35 (linking to announcement); *Cent. States, Se. and Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75, n.3 (2d Cir. 2013) ("Because Central States incorporated this article into the complaint by reference, we may properly consider even those portions of the article not quoted in the complaint").

Today, the board of directors of The Arena Group Holdings, Inc. (NYSE American: AREN) met and took actions to improve the operational efficiency and revenue of the company. The board terminated the employment of CEO Ross Levinsohn, and named Manoj Bhargava as interim Chief Executive Officer, both effective today.

This follows actions last week, in which the company terminated the employment of operations president and COO Andrew Kraft, media president Rob Barrett, and corporate counsel Julie Fenster.

(Ex. 1 to Pelton Decl.)

**Statement 2:** Next, Barrett alleges that "Bhargava publicly stating that Mr. Barrett should 'stop doing dumb stuff' was that [*sic*] he did 'useless' things was defamation per se." (Compl. ¶ 89.)

**Statement 3:** Barrett also alleges that Bhargava defamed him by "confirm[ing] to the media that he 'fired two senior executives,' Mr. Kraft and Mr. Barrett, 'following its recent AI fiasco' involving the Arena Group's use of Artificial Intelligence for Sports Illustrated published material in which for [*sic*] Sports Illustrated 'had been publishing affiliate link-laden commerce articles under the bylines of fake writers.'" (*Id.* ¶ 37; *see also id.* ¶ 90.)

Barrett is quoting an article authored by Maggie Harrison Dupre and published on Futurism.com on December 6, 2023. (Ex. 2 to Pelton Decl.[3]) Harrison Dupre opens by writing, "*Sports Illustrated* publisher The Arena Group has fired two senior executives, COO Andrew Kraft and President Rob Barrett, following its recent AI fiasco." (*Id.*) However, she goes on to

---

[3] Barrett's Complaint quotes this article (¶¶ 37, 90), but does not attach it. Nevertheless, because Barrett's defamation claim is based on statements contained in this document, the Court can consider the entirety of the Futurism article in deciding this Motion. *See, e.g., Raffaele v. City of New York*, 144 F. Supp. 3d 365, 372 (E.D.N.Y. 2015) ("[T]he court considers DA Brown's press release in deciding defendants' motion to dismiss, because plaintiff has 'relied on' the press release in bringing its defamation claim by alleging that the press release contains defamatory statements."); *CDC Newburgh Inc. v. STM Bags, LLC*, 2023 WL 6066136, at *7 (S.D.N.Y. Sept. 18, 2023) ("[T]he Court may consider in its determination the allegedly defamatory statements that are included in the Reports Defendant provided, as it is also undisputed that the Reports are integral to the [amended complaint]"); *Sheffield v. Roslyn Union Free Sch. Dist.*, 2014 WL 4773993, at *8 (E.D.N.Y. Aug. 11, 2014) (considering full text of allegedly defamatory press release even though the complaint only quoted excerpts of it).

say that a representative for Bhargava confirmed that the terminations were unrelated to the "AI fiasco" (*id.*):

> Speaking to *Futurism*, Bhargava's rep claimed the dismissals were unrelated to recent revelations about Arena Group's use of AI or the resulting damage to the reputation of *Sports Illustrated* and Arena Group writ large – and that the cuts were made as part of Bhargava's overall reorganization plan.

**Statement 4:** Finally, Barrett alleges that Bhargava defamed him when, at an investor conference on January 23, 2024, Bhargava said that Arena's former executives, including Barrett, had lost the company money. (Compl. ¶ 47.)

Bhargava now respectfully requests that the Court dismiss Barrett's claims against him for breach of the duty of good faith and fair dealing, defamation, and violation of the FLSA.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint can meet this standard only through its "factual content." *Id.* Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," will not do. *Twombly*, 550 U.S. at 555. For defamation claims, this means that a plaintiff must specify, at a minimum, "'(1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and (4) the third parties to whom the statements were published.'" *Ben Hur Moving & Storage, Inc. v. Better Bus. Bureau of Metro. N.Y., Inc.*, 2008 WL 4702458, at *5 (S.D.N.Y. Oct. 3, 2008) (quoting *Rsrv. Sols., Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 289 (S.D.N.Y. 2006)).

"'In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents

incorporated in it by reference, and any document upon which the complaint heavily relies.'" *Sheffield*, 2014 WL 4773993, at *8 (quoting *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014)). In this instance, this means that the Court may properly consider Barrett's Complaint as well as the documents containing Bhargava's allegedly defamatory statements. *See supra* at nn. 2-3. Where Barrett's allegations are contradicted by the documents referenced by the Complaint, "the documents control, and the Court need not accept the allegations contained within the complaint as true." *Novartis Pharma AG v. Incyte Corp.*, 520 F. Supp. 3d 514, 524 (S.D.N.Y. 2021) (citation and quotation marks omitted).

## ARGUMENT

### I.    Barrett Fails to State a Claim Against Bhargava for Breach of the Implied Covenant of Good Faith and Fair Dealing

"[U]nder New York law, only parties to a contract can be held liable for breach of the implied covenant of good faith and fair dealing." *Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 566 (S.D.N.Y. 2016). It is undisputed that Bhargava was not a party to any of Barrett's employment-related agreements. (Compl. ¶¶ 10, 19, 21.) Rather, the Employment Agreement, the Amendment, and the Severance Agreement were all between Barrett and Arena (or its predecessor, TheMaven). (*Id.*) In addition, Barrett does not allege that he ever entered into any other contract with Bhargava. (*See generally* Compl.) Accordingly, the Court must dismiss Barrett's claim for breach of the duty of good faith and fair dealing. *See, e.g., Kamdem-Ouaffo*, 160 F. Supp. 3d at 566-67 ("Because they were not parties to the Agreement, Plaintiff cannot state a contractual claim for breach of the implied covenant of good faith and fair dealing against PepsiCo, Dr. Given, and Dr. Zhang"); *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 727 (S.D.N.Y. 2014) (granting motion to dismiss); *Ahead Realty LLC v. India House, Inc.*, 938 N.Y.S.2d 17, 19 (App. Div. 2012) (affirming dismissal of breach of duty claim).

**II.      Barrett Fails to State a Claim Against Bhargava for Defamation**

In New York, plaintiffs must plead facts sufficient to establish five elements for each alleged instance of defamation: "(1) a false and defamatory statement of fact, (2) concerning the plaintiff, (3) published without privilege or authorization to a third party by the defendant, (4) constituting fault as judged by, at a minimum, a negligence standard, and (5) causing special harm or constituting defamation *per se.*" *Raffaele,* 144 F. Supp. 3d at 379*; see also Salvatore v. Kumar,* 845 N.Y.S.2d 384, 388 (App. Div. 2007) (listing similar elements). Barrett cannot meet this standard for even one of the four[4] statements he challenges in his Complaint.

A. <u>Barrett Has Not Sufficiently Pled Fault for Any of the Four Statements at Issue</u>

As an initial matter, Barrett has not adequately alleged that Bhargava acted with the requisite degree of fault for Statements 1 through 4.

In New York, fault is measured by one of three different tests, depending on the status of the plaintiff and the subject matter of the allegedly defamatory statement. At a minimum, a plaintiff must plead negligence, the standard that applies when the plaintiff is a private figure and the statement concerns a purely private matter. *See, e.g.*, *Lee v. City of Rochester*, 663 N.Y.S.2d 738, 753 (Sup. Ct. 1997) (negligence is the "floor standard"); *Raffaele,* 144 F. Supp. 3d at 379. In that case, the plaintiff must allege that the defendant "failed to exercise ordinary care in publishing false statements which defamed plaintiff, considering the foreseeable danger of injury

---

[4] In addition to Statements 1 through 4, Barrett tosses off a cursory accusation that his termination letter was "defamatory and untrue." (Compl. ¶ 44). Should Barrett seriously contend that his termination letter gives rise to a defamation claim, it must be dismissed as it does not meet the heightened pleading standard for these types of claims. *Supra* at 5. He does not specify the allegedly defamatory statement or the third party to whom it was published. (*See generally* Compl.) His claim cannot stand. *See, e.g.*, *Ben Hur*, 2008 WL 4702458, at *5 (dismissing defamation claim); *Reynolds v. Vill. of Chittenango*, 2020 WL 1322509, at *8-9 (N.D.N.Y. Mar. 20, 2020) (dismissing defamation claim when allegation was "vague and wholly devoid of any support as to the precise nature of the defamatory statements").

from the publication and the reasonableness of defendants' conduct in proportion to that danger." *Id.* at 754 (cleaned up).

If, alternatively, a statement about a private figure implicates a subject of "legitimate public concern," the plaintiff must establish "gross irresponsibility": i.e., that the defendant "acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chapadeau v. Utica Observer-Dispatch, Inc.,* 341 N.E.2d 569, 571 (N.Y. 1975).

Finally, if the allegedly defamatory statement was made "in a place open to the public or a public forum in connection with an issue of public interest," then the plaintiff must plead actual malice. N.Y. Civ. Rights Law § 76-a(1), (2). To show actual malice, the plaintiff must establish that the statement was made "'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Margolies v. Rudolph*, 2023 WL 6151514, at *6 (E.D.N.Y. Sept. 20, 2023) (quoting *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)). This is a "'difficult standard'" that requires a "sufficient basis 'to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Id.* (quoting *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) and *BYD Co. v. VICE Media LLC*, 2022 WL 598973, at *2 (2d Cir. Mar. 1, 2022)).

Here, Barrett must plead gross irresponsibility with respect to Statement 4. Bhargava's statement touches on the financial health of a publicly-traded company, and thus is within the "sphere of legitimate public concern." *Post v. Regan*, 677 F. Supp. 203, 208 (S.D.N.Y. 1988) (public corporation's financial losses and subsequent remedial measures were matters of public concern); *cf. Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 102 (2d Cir. 2000) (applying gross irresponsibility test when statements addressed real estate valuations).

What is more, Barrett is required to plead actual malice with respect to Statements 1 and 3. Both the press release announcing Barrett's termination and the Futurism article were published online, in a public forum (the Internet). *See, e.g.*, *Margolies v. Rudolph*, 2022 WL 2062460, at *7 (E.D.N.Y. June 6, 2022) (post in Facebook group was communication in a public forum). And both relate to a matter of public concern, namely the restructuring and financial performance of a publicly-traded company. *See* N.Y. Civ. Rights Law § 76-a(1)(d) ("'public interest' shall be construed broadly, and shall mean any subject other than a purely private matter"); *see also, e.g.*, *Lindberg v. Dow Jones & Co., Inc.*, 2021 WL 3605621, at *8 (S.D.N.Y. Aug. 11, 2021) (companies' financial status was matter of public concern); *cf. Aristocrat Plastic Surgery, P.C. v. Silva*, 169 N.Y.S.3d 272, 276 (App. Div. 2022) (online reviews of businesses are matters of public concern).

Regardless of which standard applies, however, the Court must dismiss all of Barrett's defamation claims, as he has not pled negligence, let alone gross irresponsibility or actual malice. The Complaint does not even include conclusory assertions that Bhargava acted "negligently," with "gross irresponsibility," or with "actual malice." (*See generally* Compl.) It is utterly devoid of any allegations about Bhargava's knowledge at the time he made the statements or allegations about what he did or did not do to investigate the truth of his statements. *See generally* Compl.; *see, e.g.*, *Cabello-Rondón v. Dow Jones & Co., Inc.*, 2017 WL 3531551, at *9 (S.D.N.Y. Aug. 16, 2017) (conclusory allegation of failure to investigate before publishing is not sufficient to establish actual malice); *contra Unlimited Cellular, Inc. v. Red Points Sols. SL*, 2023 WL 4029824, at *3 (S.D.N.Y. June 14, 2023) (plaintiff adequately pled negligence by alleging that defendant failed to take steps to confirm that listings were counterfeit and failed to retract report after receiving proof of inaccuracy). In sum, Barrett has fallen woefully short of pleading fault. This is, by itself, grounds for dismissal.

B. <u>Statement 1 Cannot Support a Defamation Claim Against Bhargava</u>

Barrett's defamation claim based on Statement 1—the public announcement of his termination—falters for three reasons, any one of which warrants dismissal.

First, Barrett has not alleged that Bhargava issued the announcement. (*Contra* Compl. ¶ 35.) Of course, "a defamation claim cannot survive without an allegation that defendants participated in the creation or the publication of the statements at issue." *Treppel v. Biovail Corp.*, 2005 WL 2086339, at *3 (S.D.N.Y. Aug. 30, 2005) (dismissing defamation claims); *see also, e.g.*, *Kilkenny v. L. Off. of Cushner & Garvey, LLP*, 905 N.Y.S.2d 661, 662 (App. Div. 2010) (affirming dismissal of defamation claim when "[t]he plaintiff failed to attribute any of the alleged defamatory statements in the complaint to the defendant HSBC Bank USA"); *Kjar v. Jordan,* 630 N.Y.S.2d 825, 825 (App. Div. 1995) (dismissing defamation claim where defendant "neither made the alleged defamatory statements nor participated in their publication"). Here, Barrett admits that "*the company*," not Bhargava, issued the announcement. (Compl. ¶¶ 35, 88 (emphasis added).) And Barrett's Complaint does not allege that Bhargava had any role in drafting or issuing the press release. (*See generally* Compl.) That is fatal.

Furthermore, Barrett cannot save his claim merely by arguing that Bhargava was the interim CEO at the time that Arena published the announcement. "[W]ithout a more specific allegation, the Court cannot simply infer that [a corporate officer was] involved in the creation or the publication of the statements at issue." *Treppel*, 2005 WL 2086339, at *4. "If that were the case, all officers, employees and authorized agents of [a company] would be vulnerable to a defamation charge" any time the company issued a statement. *Id.* That is not the law.

Second, Barrett has not pled sufficient facts to show that Statement 1 is false. "To survive a motion to dismiss, plaintiffs must do more than perfunctorily state that a statement is false." *Doe #1 v. Syracuse Univ.*, 468 F. Supp. 3d 489, 513 (N.D.N.Y. 2020) (cleaned up). "Rather,

plaintiffs 'must identify how the defendant's statement was false' and 'plead facts [that], if proven, would allow a reasonable person to consider the statement false.'" *Id.* (quoting *Goldman v. Reddington*, 417 F. Supp. 3d 163, 171 (E.D.N.Y. 2019)). Reading Statement 1 in the light most favorable to Barrett, it expresses that Barrett was terminated in order "to improve the operational efficiency and revenue of the company." (Ex. 1 to Pelton Decl.) It is undisputedly true that Barrett was terminated. (Compl. ¶ 30.) Moreover, there is nothing in the Complaint to suggest that Barrett was not, in fact, dismissed to improve efficiency and revenue. (*See generally id.*) Indeed, the Complaint is devoid of *any* allegations about the reasons for Barrett's termination, save for a cursory denial that it was for cause. (Compl. ¶ 42.) Because Barrett has not explained how the announcement is false, his defamation claim fails. *Doe #1*, 468 F. Supp. 3d at 513 (dismissing defamation claim); *Cabello-Rondón*, 2017 WL 3531551, at *5 (same: "Cabello has failed to adequately plead that those statements are materially false because he has not challenged the 'gist or substance' of those statements").

Third, Statement 1 is not defamatory as a matter of law because it is merely a statement that Barrett's employment had been terminated, without attribution of improper behavior.[5] A defamatory statement is one that "'tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace or induce an evil opinion of him in the minds of right-thinking people to deprive him of their friendly intercourse in society.'" *Ferlito v. Cnty. of Suffolk*, 2007 WL 4180670, at *4 (E.D.N.Y. Nov. 19, 2007) (quoting *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 366 N.E.2d 1299, 1305 (N.Y. 1977)). A statement that the plaintiff has been terminated does not constitute defamation unless it also "contains an insinuation that the dismissal was for some misconduct." *Nichols v. Item Publishers, Inc.*, 132 N.E.2d 860, 862 (N.Y. 1956); *see also Ratzel*

---

[5] Whether a statement is defamatory is a question of law for the court to decide. *E.g.*, *Raffaele*, 144 F. Supp. 3d at 380.

*v. N.Y. News Pub. Co.*, 67 A.D. 598, 600–01, 73 N.Y.S. 849, 851 (App. Div. 1902) ("An employer has the right to publish a notice that a given individual has severed his connection with him, and is no longer in his employ, without incurring liability therefor.").

Arena's announcement that the employment terminations were motivated by a desire to increase efficiency and revenue does not imply that Barrett or anyone else acted improperly. (Ex. 1 to Pelton Decl.) It does not "'reflect[] in any way on [plaintiff's] personal or professional integrity or ability,'" nor does it suggest that Barrett was dismissed due to "'incompetency, misconduct or any other behavior that could be said to disparage him personally or in his profession.'" *Lian v. Sedgwick James of N.Y., Inc*., 992 F. Supp. 644, 649 (S.D.N.Y. 1998) (quoting *Nichols*, 132 N.E.2d at 862). Thus, as a matter of law, it cannot be said to be defamatory. *See, e.g.*, *id.* (granting motion to dismiss defamation claim); *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 174 (S.D.N.Y. 2021) (dismissing defamation claim based on article reporting that plaintiff had been terminated when article did not suggest that plaintiff had been terminated for cause or misconduct).

To the extent Barrett argues that Statement 1 implies that his performance was unsatisfactory, the Court must reject his theory on two grounds. Barrett's Complaint does not make the "rigorous showing" that the language of the communication "affirmatively suggest[s] that [Arena] intended or endorsed [a defamatory] inference," as required to state a claim for defamation by implication. *Stepanov v. Dow Jones & Co.*, *Inc*., 987 N.Y.S.2d 37, 44 (App. Div. 2014). And under New York law, comments about an employee's performance are non-actionable opinions, not statements of fact. *E.g.*, *Doe v. White Plains Hosp. Med. Ctr.*, 2011 WL 2899174, at *3 (S.D.N.Y. July 8, 2011) ("New York courts have consistently held that subjective job evaluations, including those in connection with an employee's termination, are non-actionable opinion."); *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 271 (2d Cir. 1999)

(superior's statement that employee's performance was unsatisfactory was non-actionable opinion).

    C. <u>Statement 2 Cannot Support a Defamation Claim Against Bhargava</u>

    Barrett's defamation claim based on Statement 2—Bhargava's remarks about "dumb" and "useless" tasks—suffers from similar deficiencies.

    To start, Barrett has not adequately alleged the most basic details surrounding Statement 2. Fed Rule of Civil Procedure 8(a)(2) requires plaintiffs to include "a short and plain statement of the claim." As noted above, courts in the Second Circuit have interpreted this to mean that, for defamation claims, the plaintiff must expressly identify "the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Mobile Data Shred, Inc. v. United Bank of Switz.*, 2000 WL 351516, at *6 (S.D.N.Y. April 5, 2000). Yet Barrett does not specify when Bhargava allegedly made these comments beyond a vague suggestion that it was sometime following Barrett's termination. (Compl. ¶ 36.) Worse, he does not allege to whom Bhargava allegedly made the statements other than to say that he made them "publicly." (*Id.*) Because Barrett's Complaint does not clear even Rule 8's low bar, it must be dismissed. *See, e.g., Mobile Data Shred*, 2000 WL 351516, at *7 (dismissing defamation claim: "By failing to indicate to whom the allegedly defamatory statements were published, MDS deprives the defendants of information crucial to the defendants' ability to respond to the claim."); *Yukos Cap. S.A.R.L. v. Feldman*, 2016 WL 183360, at *1 (S.D.N.Y. Jan. 11, 2016) (dismissing defamation claim when complaint did not allege "either the time when or the third parties to whom the allegedly defamatory statements allegedly were published").

    Even if he had pled Statement 2 with the requisite specificity, though, it still cannot serve as the basis for a defamation claim. It is axiomatic that, unlike statements of fact, opinions are

not actionable. *E.g.*, *Dfinity Found. v. N.Y. Times Co.*, 2023 WL 7526458, at *3 (S.D.N.Y. Nov. 13, 2023). In distinguishing between protected opinions and actionable facts, courts are guided by "whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous;" "whether the statement is capable of being objectively characterized as true or false;" "an examination of the full context of the communication in which the statement appears;" and "a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* (quotation marks omitted).

Applying those factors here, Statement 2 is merely an opinion. Words like "dumb," "useless," and "staggering" are vague and ambiguous. *See Jacobus v. Trump*, 51 N.Y.S.3d 330, 336 (Sup. Ct. 2017) (insults like "real dummy" and "really dumb" were opinions); *Doe #1*, 468 F. Supp. 3d at 514 (descriptions of behavior as "ugly" and "disturbing" were opinions). It is impossible to objectively determine whether Barrett really was doing "dumb stuff" and whether the amount of "useless stuff" he was doing was "staggering." A reasonable person hearing Bhargava's informal expressions would understand that he was not making pronouncements of fact, but rather expressing his personal opinions about the company's operations. *Marom v. Pierot*, 2020 WL 6572509, at *11 (S.D.N.Y. Aug. 30, 2020) (dismissing statement made in the context of a "rambling…monologue" that a house was a "nightmare").

Moreover, as noted above, courts have repeatedly held that a supervisor's assessment of his employee's performance constitutes a protected opinion. *Supra* at 12-13. Thus, even if Bhargava expressly criticized Barrett for doing "dumb stuff," his criticisms would not give rise to a defamation claim. *See, e.g.*, *Howard v. Alford*, 645 N.Y.S.2d 208, 208-09 (App. Div. 1996) (dismissing defamation claim: "these people weren't producing as we thought they should" was

opinion); *cf. Varughese v. Mount Sinai Med. Ctr.*, 2015 WL 1499618, at *74 (S.D.N.Y. Mar. 27, 2015) (descriptions of plaintiff's work as "unsatisfactory," "unprofessional," and "substandard" were "matters of opinion").

      D. <u>Statement 3 Cannot Support a Defamation Claim Against Bhargava</u>

Barrett's claim under Statement 3, the Futurism article about the "AI fiasco," fares no better than the first two.

As with Statement 1, Barrett has failed to allege that Bhargava made the allegedly defamatory statements contained in Statement 3. It was Harrison Dupre, not Bhargava, who wrote that "[t]op execs at Sports Illustrated's publisher [had been] fired after [an] AI debacle." (Ex. 2 to Pelton Decl.) To the contrary, Bhargava expressly disclaimed any inference that Barrett's termination was related to Arena's use of AI. (*Id.*) For his part, Barrett has not alleged that Bhargava had any involvement in drafting or reviewing the article, other than providing an exculpatory statement through his representative. (*See generally* Compl.) Without any allegations identifying Bhargava as the source of the allegedly defamatory commentary, Barrett's defamation claim must be dismissed. *See, e.g.*, *Bostich v. U.S. Tr. Corp.*, 650 N.Y.S.2d 524 (App. Div. 1996); *Kraus v. Brandstetter*, 610 N.Y.S.2d 527, 528 (App. Div. 1994) (trial court properly dismissed defamation claim against defendants "who were not on the board which issued the defamatory statement of no confidence, and did not participate in its publication"); *cf. Doscher v. Meyer*, 112 N.Y.S.3d 237, 239-40 (App. Div. 2019) (affirming grant of sanctions against attorney who brought defamation claim when "the complaint is bereft of any allegations setting forth a basis to hold [defendants] liable for Burrows's statement").

On the other hand, the portion of the article that *is* attributable to Bhargava is not defamatory. Bhargava, through his spokesperson, told Futurism that Barrett was terminated as part of his "overall reorganization plan." (Ex. 2 to Pelton Decl.) Nothing in that statement

impugns Barrett's integrity or professional abilities. It is simply an innocuous characterization of the reasons for Barrett's dismissal. That is not defamation, and the Court should grant Bhargava's motion to dismiss. *See, e.g.*, *Kesner*, 515 F. Supp. 3d at 174; *Lian*, 992 F. Supp. at 649.

      E. <u>Statement 4 Cannot Support a Defamation Claim Against Bhargava</u>

      Lastly, Barrett's defamation claim under Statement 4, Bhargava's remarks at the investor conference, is fatally flawed in two respects.

      First, Statement 4 cannot be the basis of a defamation claim because it is protected by the common interest privilege. Under this doctrine, an allegedly defamatory statement is not actionable if it is made between two or more persons who have a common interest in the subject. *See, e.g.*, *Stillman v. Ford*, 238 N.E.2d 304, 306 (N.Y. 1968). Bhargava and his fellow investors shared an interest in Arena's financial performance, so Bhargava's alleged comment that Barrett and other executives had lost money for Arena falls within the privilege. *E.g.*, *Loughlin v. Goord*, 558 F. Supp. 3d 126, 153 (S.D.N.Y. 2021) (company and its investors shared a common interest in information about the company's stocks); *Konikoff v. Prudential Ins. Co. of Am.*, 1999 WL 688460, at *13 (S.D.N.Y. Sept. 1, 1999) ("Those sharing a conditional privilege to communicate defamatory matter concerning their common interests include, among others, partners, fellow officers of a corporation, fellow shareholders, fellow employees and persons associated together in professional activities.").

      Because the common interest privilege applies to Statement 4, in order to survive a motion to dismiss, Barrett must plead facts sufficient to overcome the privilege. He has not. A plaintiff may defeat the common interest privilege only by showing either actual malice or common law malice. *E.g.*, *Hodges v. Lutwin*, 2023 WL 3362836, at *3 (2d Cir. May 11, 2023). Actual malice in this context is measured by the same standard used to assess fault. *Id.*; *supra* at 8. Common law malice, meanwhile, means that the defendant's sole motivation for making the

statement was "spite or ill will." *Hodges*, 2023 WL 3362836, at *3 (citation and quotation marks omitted). As explained above, Barrett has not alleged actual malice. *Supra* at 9. And the Complaint does not contain anything to suggest that Bhargava was spurred to make Statement 4 by his personal hatred of Barrett and that hatred alone. *See, e.g.*, *Davis v. Sedgwick Claims Mgmt. Servs. Inc.*, 2023 WL 6150009, at *18 (S.D.N.Y. Aug. 30, 2023) (dismissing defamation claim when plaintiff did not demonstrate common law malice); *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 335 (S.D.N.Y. 2010) (same). Therefore, the Court should dismiss this claim on the grounds that Statement 4 is a non-actionable statement of common interest.

Second, the allegations in Barrett's Complaint do not establish that Bhargava's statement was false. To be sure, Barrett trumpets that he drove an increase in forecasted revenue while working for Arena. (Compl. ¶ 18.) But the Complaint is otherwise silent as to Arena's debts, liabilities, or overall balance sheet. (*See generally* Compl.) In other words, nothing in the Complaint belies Bhargava's alleged statement that Barrett and the other executives had lost money for the company. Without these facts, Barrett has failed to plead a claim of defamation. *See, e.g.*, *Doe #1*, 468 F. Supp. 3d at 513 (dismissing defamation claim when plaintiff did not explain how statement was false); *Cabello-Rondón*, 2017 WL 3531551, at *5 (same).

## III.   Barrett Fails to State a Claim against Bhargava Under the FLSA

It is beyond cavil that "'[t]he FLSA statute requires payment of minimum wages and overtime wages only.'" *Hosseini v. Miilkiina LLC*, 2023 WL 2136390, at *4 (S.D.N.Y. Feb. 21, 2023) (quoting *Nakhata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)). But Barrett does not claim that Bhargava failed to pay him the minimum wage or overtime, nor could he. Barrett admittedly earned in excess of $440,000 a year (Compl. ¶ 20), far surpassing the national minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(c). Instead, he alleges that Bhargava is liable for failing to pay him the six-figure bonus specified in his

Employment Agreement. (Compl. ¶¶ 11, 78.) "The trouble for [Barrett] is that the FLSA permits a claim for a failure to promptly pay *minimum wages*—not agreed-upon wages." *Barone v. Inspire Summits LLC*, 2022 WL 3139124, at *2 (E.D.N.Y. Aug. 4, 2022) (emphasis in original). Courts in this Circuit have consistently rejected similar attempts to pervert the FLSA's protections, and this Court should follow suit. *See, e.g.*, *Shetty v. SG Blocks, Inc.*, 2020 WL 3183779, at *5 (E.D.N.Y. June 15, 2020) (dismissing highly-compensated executive's claim for unpaid wages under the FLSA); *Momin v. Quantierra Advisors LLC,* 2022 WL 2002282, at *2 (S.D.N.Y. June 3, 2022) ("employees—and particularly highly paid employees—cannot use the FLSA to pursue breach of contract claims"); *McCormick v. Phinizy & Phebe Handmade LLC*, 2020 WL 13572189, at *5 (E.D.N.Y. Aug. 17, 2020).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Barrett's claims against Bhargava for breach of the duty of good faith and fair dealing (Count 5), defamation (Count 6), and violation of the FLSA (a part of Count 4).

Dated: March 13, 2024

Respectfully submitted,

S/ *Eric J. Pelton*
Eric J. Pelton (*admitted pro hac vice*)
Lauren Walas (*admitted pro hac vice*)
KIENBAUM HARDY VIVIANO PELTON
& FORREST, P.L.C.
280 N. Old Woodward Ave.
Ste. 400
Birmingham, MI 48009
Phone: (248) 645-0000
Facsimile: (248) 458-4581
epelton@khvpf.com
lwalas@kvhpf.com

*Attorneys for Defendant Manoj Bhargava*